### AMERADA PETROLELM CORP. et al. v. SLEDGE et al.

No. 20154. Opinion Filed Sept. 15, 1931.

Victor C. Mieher and R. Y. Stevenson, for plaintiff in error Amerada Petroleum Corporation.

Geo. N. Otey and Hagan & Gavin, for plaintiffs in error Walter H. Gant, Knox L. Garvin, and Atlantic Oil Producing Company.

Melton & Melton, for defendants in error.

CLARK, V. C. J. This cause presents error from the district court of Grady county. For convenience parties will be referred to as they appeared in the trial court.

Plaintiffs, D. T. Sledge and Hettie M. Sledge, brought this action on the 3rd day of November, 1927, against the Amerada Petroleum Corporation, a corporation, Atlantic Oil Producing Company, a corporation, Walter H. Gant, and Knox L. Garvin.

Plaintiffs allege that on the 27th day of February, 1925, plaintiffs executed and delivered to defendant Amerada Petroleum Corporation an oil and gas lease on 110 acres of land (described in petition) for a term of two years from said date and as long thereafter as oil or gas or either of them is produced from said land by said lessee; the lease was the usual 88 form and provided for ⅛th royalty of the gas or oil.

That thereafter Amerada Petroleum Corporation assigned an undivided one-half interest in and to said lease covering a part of said land to defendants Walter H. Gant and Knox L. Garvin. That the said Knox L. Garvin and Walter H. Gant assigned a one-half interest in and to said lease covering a part of the land therein described to the defendant Atlantic Oil Producing Company.

The record discloses that one-half interest of 40 acres in section 6 was assigned to Walter H. Gant and Knox L. Garvin and that Gant and Garvin assigned one-fourth interest in said 40 acres to the Atlantic Oil Producing Company.

Plaintiffs further allege that prior to the expiration of the two-year term of said lease, about the month of November, 1926, defendants drilled and completed a gas well in the southwest corner of the southwest quarter of the southeast quarter of section 6, which gas well, since completion, produced large quantities of commercial gas, which had been sold by the defendants and such defendants had paid the plaintiffs part of their ⅛th royalty on such gas, about the sum of $1,000. Plaintiffs alleged that the true amount of plaintiffs' ⅛th royalty on the gas produced and sold from said well amounts to a much larger sum.

Plaintiffs further allege that in the month of April, 1927, there was completed by some of the defendants a gas well in section 6 on lands other than that belonging to plaintiffs by offsetting the gas well on plaintiffs' land hereinbefore described; such gas well has

since produced large quantities of gas from the depth of about 1,800 feet, being the same depth from which the well on plaintiffs' land produced gas.

That immediately east of plaintiffs' land there had been drilled several oil wells, the nearest of which is less than one-fourth of a mile from the east line of plaintiffs' land and which oil wells have produced large quantities of oil. some of such oil wells producing two to four hundred barrels of oil per day and all of such oil wells producing such oil from a depth of 1,890 feet and less than 200 feet below the gas sand from which plaintiffs' well is producing. That such territory in and adjacent to plaintiffs' land has for several months been proven territory for the production of both oil and gas.

That it was the duty of the defendants to develop plaintiffs' land by drilling wells and producing oil and gas therefrom to such an extent as would benefit both plaintiffs and defendants, and that there has been at all times a ready and sufficient market for all oil and gas that might have been produced from the land of the plaintiffs. It was the duty of the defendants to proceed with due diligence to drill a sufficient number of wells to develop said lands for gas and produce and market the same. But in violation of such duty and obligations, defendants have failed and refused to drill any wells on plaintiffs' land, other than the gas well drilled thereon, almost a year ago, and have permitted the gas well drilled in section 7, immediately east of the plaintiffs' land, to drain the gas therefrom, and have failed and refused to drill a well on plaintiffs' land offsetting said gas well.

That on or about the 15th day of May, 1927, plaintiffs wrote a letter to the defendant Amerada Petroleum Corporation calling attention to said gas well offsetting plaintiffs' land and in such letter requested and demanded that defendants drill a well on plaintiffs' land to prevent drainage on such offset well.

This is the material allegations of plaintiffs' petition; prayed that said lease be canceled, for an accounting and for all other relief equitable and legal that plaintiffs may be entitled.

Defendants, Atlantic Oil Producing Company, Amerada Petroleum Corporation, Walter H. Gant, and Knox L. Garvin, filed separate answers by way of general denial and further answered that plaintiffs had received the benefit of the gas well on said land and were now estopped from maintaining this action.

Plaintiffs filed a reply to answer of defendants, which consisted of a general denial; cause came on for trial before the court, without the intervention of a jury. Considerable testimony was introduced by plaintiffs and defendants as to their respective contentions; the record discloses that plaintiffs executed a lease as charged in plaintiffs' petition to the Amerada Petroleum Corporation, and that the principal consideration for the execution of said lease was the development of the land for oil and gas. The record discloses that the Amerada Petroleum Corporation assigned an undivided one-half interest in said lease, covering 40 acres in section 6, to Garvin and Gant. That Garvin and Gant assigned an undivided one-fourth interest to the Atlantic Oil Producing Company.

The record further discloses that during the term of said lease a commercial gas well was completed on this 40 acres and was producing gas in paying quantities.

The record further discloses that there was a gas well producing gas in paying quantities on other lands, approximately 300 feet from plaintiffs' line, and that the defendants failed and refused to offset this well, also requested so to do by plaintiffs. Defendants' reason for failing to offset this well was that it had drilled one well on the 110 acres and that same was sufficient to comply with the lease.

The record further discloses that on land adjacent to plaintiffs' land oil wells had been brought in making from 35 to 400 barrels per day.

R. A. Burk, an employee of the defendant Amerada Petroleum Corporation, testified that his company did not intend to drill unless conditions got better; that oil was only worth about $1.30 at that time. There was a conflict in the testimony as to whether or not it would be profitable to develop said land at the price of oil prevailing at the time of the trial.

The court made findings of fact, which in substance are as follows: The court found plaintiffs the owners of the land described in the petition, same being 110 acres, and that plaintiffs leased the same to defendant Amerada Petroleum Corporation. The Amerada Petroleum Corporation assigned an undivided one-half interest in 40 acres in section 6 to Walter H. Gant and Knox L. Garvin, and thereafter Gant and Garvin assigned to the Atlantic Producing Company

an undivided one-fourth interest in the lease on said 40 acres; the court further found that in November, 1926, defendants completed a gas well in the southwest corner of the southwest quarter of the southeast quarter of section 6 at a depth of about 1,800 feet, which produced gas in paying quantities, and continued to produce gas in paying quantities up to the time of the trial, and that no delay rentals were paid under said lease and no other wells of any kind drilled on said land.

The court further found that defendants had faithfully accounted to the plaintiffs for all royalty due from the gas well and plaintiffs received the royalty due therefrom.

The court further found the main consideration for said oil lease on said 110 acres of land was the development and production of gas therefrom and the parties to said lease contemplated the drilling and production of oil and gas from said land.

The court further found that in the month of April, 1927, some of the defendants completed a gas well in the northeast corner of the northwest quarter of the northeast quarter of section 7, on the Phipps land offsetting plaintiffs' land and about 300 feet from the east line of plaintiffs' land, which gas well has, since said time, produced gas in paying quantities and has drained the gas from plaintiffs' land west of said land. On the 15th day of May, 1927, plaintiffs demanded of the defendants that a well be drilled on plaintiffs' land offsetting the gas well on the Phipps land, but defendants failed to comply with such demand and refused to drill such offset well.

The court further found plaintiffs' land is located in territory proven for oil production in paying quantities and that if defendants had diligently drilled for oil on plaintiffs' land, in all probability oil would have been produced in sufficient quantities to return a reasonable profit, both to the lessee and the lessor at the prevailing price of oil in this field since the date of plaintiffs' lease up to the time of the trial.

The court further found that since the date of plaintiffs' lease up to the time of the trial there was at all times existing in said oil field adequate and sufficient marketing facilities for all oil and gas produced or that would have been produced from the plaintiffs' land. The court's finding of fact No. 9 is as follows:

"That the defendants have knowingly failed to diligently develop and operate plaintiffs' land, and produce oil and gas therefrom, and have knowingly failed to exercise the diligence of reasonable prudent operators in the drilling and development of plaintiffs' land and the production of oil and gas therefrom."

The court further found that plaintiffs have not waived failure of the defendants to faithfully and diligently drill plaintiffs' land.

The court further found that defendants have not received sufficient returns from the gas well drilled on plaintiffs' land to compensate the defendants for the money expended in drilling and operating said well and in the application of equity find that the defendants should retain their oil and gas lease on 20 acres in said section 6, being the 20 acres on which the gas well is located, and that said lease on all of the balance of the 110 acres of land should be canceled.

The court entered its decree canceling said lease as to all lands described herein except the 20 acres on which gas well was located.

Motion for a new trial was filed, overruled, and cause brought here for review.

Separate briefs are filed in behalf of Amerada Petroleum Corporation and in behalf of Walter H. Gant, Knox L. Garvin, and Atlantic Oil Producing Company, a corporation. A joint petition in error was filed and the assignments of error will be considered together.

Assignments of error in substance are to the effect that the evidence was insufficient to support the judgment of the trial court and a judgment herein canceling said lease on 90 acres of the land involved and that a reasonably prudent operator, having in mind the interest of the lessor and lessee, would not have drilled on the 40 acres owned jointly by the plaintiffs in error.

Plaintiffs in error seek to have the court separate the two tracts and consider the testimony as to each tract separately and decide the same as though the 40-acre tract assigned and the residue retained by the Amerada Petroleum Corporation were separate and distinct leases.

This court, in the case of Pierce Oil Corporation v. Schacht, 75 Okla. 101, 181 Pac. 731, in the 2nd paragraph of syllabus, says:

"Where a tract of land subject to an oil and gas lease is transferred to different parties, the purchaser of each portion takes the same subject to such lease; and, should the lessee thereafter discover and produce oil or gas from the leased premises, the purchaser is entitled to the royalties accruing from the

oil and gas produced on the portion of the premises owned by him."

This court, in the case of Galt et al. v. Metscher, 103 Okla. 271, 229 Pac. 522, in the 1st and 2nd paragraphs of syllabus, says:

1. "When a 160-acre tract lying in one body has been leased for oil and gas by a lease contract on the ordinary commercial form, and thereafter the owner of the fee sells the royalty interest in the south 80 acres, retaining the royalty interest in the north 80 acres, the owner of each 80 acre tract holds the same subject to such oil and gas mining lease, and should the lessee thereafter discover and produce oil from the leased premises, the owner of the royalty interest in the tract on which the oil well is located is entitled to the royalties accruing from such oil production."

2. "A provision in such oil and gas mining lease permitting assignment in whole or in part does not make the lease a separate lease upon each tract of land so assigned, but the same remains a lease upon the entire tract of land, and none of the rights, privileges, or appurtenances of the owner of the oil and gas mining lease are impaired by a division of the royalty interest."

The rule announced in the above cases, supra, apply with equal force to the lessee and the division of the lease or an assignment of a part thereof will not relieve the lessee or his assigns from developing the property according to the express and implied covenants of the lease.

It is next contended that no demand was made and that there was no specific notice to the defendants demanding that they drill for oil on the 40-acre tract on which the gas well had been drilled.

We think the notice received by the defendants is in substantial compliance with the rule and sufficient under the evidence and circumstances.

The court found that the main consideration for said oil lease on said 110 acres of land was the drilling and development and production of oil and gas therefrom and the parties to said lease contemplated the drilling and production of oil from said land. The discovery of gas in paying quantities by the drilling of one well on said premises does not relieve the lessee from the implied covenant to diligently continue development of said property and to drill offset wells to protect the lessor from drainage; this the plaintiffs in error failed to do.

The trial court found that the plaintiffs in error had failed to diligently and properly develop said property, and in fact a representative of the Amerada Petroleum

Corporation testified that his company would not drill, did not intend to develop said property unless oil went up 25 to 50 cents per barrel; oil at that time was selling for $1.30 per barrel; and there being a conflict in the testimony, this court will not disturb the judgment and decree of the trial court unless clearly against the weight of the evidence.

A careful examination of the record discloses the evidence amply sufficient to support the finding and judgment of the trial court.

Finding no error, judgment is affirmed.

LESTER, C. J., and CULLISON, SWINDALL, ANDREWS, McNEILL, and KORNEGAY, JJ., concur. RILEY and HEFNER, JJ., absent.

Note.—See under (1) R. C. L. Perm. Supp. p. 4585.