**NATIONAL BANK OF COMMERCE, Tulsa, Oklahoma, a corporation, Plaintiff in Error,**

v.

**STATE of Okla. ex rel., Denzil D. GARRISON, County Attorney, Defendant in Error.**

**No. 39232.**

Supreme Court of Oklahoma.

Jan. 16, 1962.

Rehearing Denied Feb. 13, 1962.

J. C. Pinkerton, James C. Pinkerton. Tulsa, for plaintiff in error.

Nathan G. Graham, James W. Connor, Bartlesville, for defendant in error.

BERRY, Justice.

On July 27, 1955, defendant in error, State of Oklahoma ex rel. Denzil D. Garrison, County Attorney, hereafter referred to as "State", instituted this action to recover from plaintiff in error, National Bank of Commerce, Tulsa, Oklahoma, hereafter referred to as "bank", statutory penalties allegedly attributable to bank's owning a ranch lying in Washington County, Oklahoma, for more than seven years.

Following trial of case to the court, judgment was entered in favor of State for a penalty in the amount of $2,402.70, together with interest thereon at the rate of 10% per annum from July 25, 1955, and an attorney's fee of $600.68.

From order of the trial court denying bank's motion for new trial, which was directed to the above referred-to judgment, bank perfected this appeal.

The pertinent facts can be summarized as follows:

In the 1920's a loan in the principal amount of $60,000.00 was made in the name of bank. The loan was secured by a mortgage covering a ranch lying in Washington County. In 1930 bank instituted an action to foreclose the mortgage. At the sale conducted pursuant to judgment foreclosing the mortgage, bank acquired title to the ranch. Bank sold or disposed of a portion of the ranch in 1940 and another portion in 1945. In 1947 the remainder of the ranch was sold.

In 1952, John W. Williams as County Attorney of Washington County, made written demand upon bank to pay statutory penalties allegedly attributable to its ownership of the ranch beyond the period permitted by applicable statute. Upon bank's failing to comply with the demand, Mr. Williams caused an action (No. 16031) of the same purport as the instant action to be filed in the District Court of Washington County

Bank caused to be filed in No. 16031 a motion to quash the summons and a plea to the jurisdiction of the court. The motion and plea were predicated upon the proposition that bank, as a national bank, was only subject to suit in Tulsa County, Oklahoma, the county of its place of business. The motion and plea were sustained and an order was entered dismissing the action "without prejudice". No further proceedings were had in the case. Bank asserts that under the doctrine of res judicata the order is conclusive on the proposition that it was only subject to suit in Tulsa County on the action here asserted by State.

Following dismissal of No. 16031, a like action (No. 84177) was filed in the District Court of Tulsa County. After bank had filed an answer in No. 84177 and State had filed a reply thereto, the parties reached an agreement to the effect that State should take judgment for approximately two-thirds of the amount that State sought to recover. The settlement agreement was in effect carried out by formal judgment of the court in No. 84177, which was rendered on October 29, 1952, and by bank paying the amount of the judgment. Bank asserts that the settlement agreement was predicated in part upon the proposition that it was questionable whether it in fact owned the ranch or held title in trust thereto for certain officers of the bank; that if it owned an interest in the ranch its interest was approximately two-thirds of the ranch. Bank contends that under the doctrine of res judicata the referred-to judgment is conclusive and bars State from prosecuting the instant action; that State is also bound by the settlement agreement.

Prior to instituting the instant action, Denzil D. Garrison, as County Attorney of Washington County, notified bank in writing to pay the penalties that State seeks to recover by the instant action. Upon bank's failing to comply with the demand, this action was instituted.

While bank makes numerous contentions in support of its petition in error, we will only consider its contentions to the effect

that venue of this action was in Tulsa and not in Washington County; that the statutes upon which this action is based do not apply to national banks; that proceeding to collect penalties will not lie following corporation's disposition of real estate held in contravention of statute, which contentions present propositions that are of interest to the public, and its contention that State is bound by the fully-executed settlement agreement reached in connection with the suit that was instituted in Tulsa County.

▆ It was provided in 18 O.S.1941 § 86f that "In the event that any penalty to which any corporation is subject is not collected within thirty (30) days from the date of notification as aforesaid, the County Attorney shall institute an action in the name of the State of Oklahoma in the District Court of the county in which the real estate illegally held is located for the recovery of said penalties." A like provision appears in 18 O.S.1951 § 1.24. Bank asserts that notwithstanding said provisions, the instant action is a "transitory action" and as such may not, under the provisions of an Act of Congress (12 U.S.C.A. § 94), be maintained in any county except that in which it maintained its banking house.

In our opinion, the effect of the referred-to statutory provision is to make an action such as the one before us a "local action". In 1 C.J.S. "Actions" § 1a(14), p. 946, a local action is defined in part as "an action which must be brought in a particular place or county". The Supreme Court of Maine said in Burtchell v. Willey, 147 Maine 339, 87 A.2d 658, 661, that "where the statute prescribes the County in which a particular * * * action shall be brought, the action is local".

The law being as above stated, the question posed is whether the referred-to Act of Congress prevails over the applicable statutes of this State.

▆ The Supreme Court of the United States held in substance in Casey v. Adams, 102 U.S. 66, 26 L.Ed. 52, that Congress, in enacting the legislation upon which bank relies, did not intend that the legislation apply to local actions.

At p. 591, Sec. 820, 7 Am.Jur. "Banks", it is stated that these provisions (the provisions relied upon by bank) "do not deprive the state courts of jurisdiction of an action against a national bank located and doing business in another state, or in a county or city other than that in which the action is brought. The view has also been taken that the foregoing provision of the National Bank Act relates to transitory actions only, and not to such actions as are by law local in their character, and national banks are not exempted from the ordinary rules of law affecting the locality of actions founded on local things."

It is provided in Sec. 86f, supra, that "Whenever it appears from the examination of any statement filed as required by this Act, or whenever the County Attorney has reason to believe that any real estate in his county *is* owned or held by a corporation in violation of the provisions of this Act," he shall give the corporation notice relative to accrued penalties and upon failure to pay the penalties shall institute an action to recover same. The substance of the section as amended (18 O.S.1951 § 1.24) is the same as Sec. 86f.

▆ Bank contends that the above quoted portion of Sec. 86f is in the present tense and that the statute makes clear that the defendant corporation must be the owner of the land at the time the notice provided in the section is given, otherwise an action to recover penalties that may have accrued in the past does not lie.

It is made clear in 18 O.S.1941 § 86a that a corporation taking title to farm land, which is not necessary and proper for transaction of its business, upon foreclosure of a mortgage covering same, shall dispose of the land within seven years from date of acquisition. It is provided in 86d of the same title that violation of Sec. 86a shall subject the offending corporation to stated penalties. For comparable sections see 18 O.S.1951 §§ 1.20 and 1.23. It is provided in 18 O.S.1941 § 86e that a corporation

holding real estate in contravention of the statutes shall each year file a statement in duplicate with the County Clerk of the county of the situs of the real estate and that the County Clerk shall deliver one of the copies to the County Attorney. For comparable section see 18 O.S.1951 § 1.22.

The record shows that bank failed to file a statement as provided in the cited statutes. In view of the fact that a penalty was clearly imposed upon an offending corporation and in view of the further fact that language of Secs. 86f and 1.24 upon which bank relies is applicable only in those instances when a statement is in fact filed as in Secs. 86e and 1.22 provided, we are of the opinion that the making of demand upon bank to pay penalties at a time when it held title to the property was not a condition precedent to State's instituting the instant action.

█ Bank refers to the portion of 12 U.S.C.A. § 29 to the effect that no national bank shall take "title and possession of any real estate purchased to secure any debts due to it, for a longer period than five years." Bank argues that the accepted construction placed on the cited statute by the Controller of Currency is that national banks may hold title and possession of real estate for any period that is thought necessary and proper to carry on the bank's business. Bank concludes that the cited statute as construed by the Controller of Currency conflicts with applicable state statutes; that congressional legislation applying to national banks controls over conflicting state legislation applying to such banks and for said reason the statutes upon which State relies are wholly without force and effect.

As indicated above, bank does not contend that Congress has enacted legislation which prohibits a state from imposing penalties upon national banks for holding real estate beyond a prescribed period nor has bank cited an Act of Congress which purports to conflict with the statutes before us. In the absence of such legislation, we are of the opinion that as to national banks

it was within the province and power of the Oklahoma Legislature to enact the legislation in controversy. In First Nat. Bank of Elizabethtown v. Commonwealth, 143 Ky. 816, 137 S.W. 518, 34 L.R.A.,N.S., 54, the court held that the statute upon which bank here relies, did not serve to strike down a statute of Kentucky providing that no corporation engaged in the banking business should own or hold real estate, except such as may be necessary and proper in carrying on its business, for a period longer than five years under penalty of escheat; that said statute applied to national banks. See also Commonwealth v. Clark County Nat. Bank, 187 Ky. 151, 219 S.W. 175, 182 and cited cases.

The Supreme Court of California held in State v. Anglo & London Paris Nat. Bank of San Francisco et al., 186 Cal. 746, 200 P. 612, that a statute providing for the escheat of unclaimed deposit did not conflict with federal statutes and that the statute applied to national banks. In the body of the opinion, the court quoted with approval from the opinion of the Court of Appeals in the same case. A part of the quotation reads as follows:

"It is not contended that there is any statute of the United States providing for the forfeiture of what is called inactive deposits in national banks, nor is it claimed that Congress has by any legislation limited the time within which such deposits may be checked out. Indeed, it is admitted that there is no federal statute expressly in conflict with said section of the Code of Civil Procedure. In fact, it is apparent that Congress has not attempted to legislate on this subject at all. Hence, it seems clear that the legislation herein does not 'expressly conflict with any law of the United States,' and is therefore not required to yield to the paramount authority of the federal government because inconsistent therewith. * * *"

In Anderson Nat. Bank v. Luckett, 321 U.S. 233, 64 S.Ct. 599, 88 L.Ed 692, 151

A.L.R. 824, the United States Supreme Court sustained the validity of a Kentucky statute of the same purport as the California statute which was in controversy in the case last above cited. In the body of the opinion this was said:

"This Court has often pointed out that national banks are subject to state laws, unless those laws infringe the national banking laws or impose an undue burden on the performance of the bank's functions." (citing cases)

■ State contends that by the settlement agreement entered into in connection with the Tulsa County suit, Mr. Williams undertook to release and extinguish an indebtedness owing the State in violation of Art. V, Sec. 53 of the Constitution, which provision reads as follows:

"The Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishing, in whole or in part, the indebtedness, liabilities, or obligations of any corporation or individual, to this State, or any county or other municipal corporation thereof."

Bank contends that under the facts of this case the above cited statute is inapplicable. We agree.

As heretofore indicated, bank, in the Tulsa County case, negotiated a settlement of the case on the basis that it held legal title to the ranch in trust for certain of its officers and for said reason could not be said to have held title to or owned the ranch in violation of the statute upon which this action is based; that, in the alternative, if it could be said to have owned an interest in the ranch its ownership was approximately an undivided two-thirds interest therein.

■ It is settled law in this jurisdiction that where the amount of a claim is in good faith disputed and the interested parties agree upon a compromise, the settlement so made constitutes a bar to any further recovery on the claim. See Jarecki Mfg. Co. v. Cimarron River Oil & Gas Co., 69 Okl. 104, 170 P. 252; L. C. Jones Trucking Company, Inc. v. Jenkins, Okla., 313 P.2d 530, and cited cases.

■ The law being as stated, it is unnecessary to here determine whether the defense asserted by bank to the Tulsa County case was well founded and it is only necessary to determine whether the defense was asserted in good faith. Our examination of the record satisfies us that the defense was urged in good faith and unless Art. V, Sec. 53 served to prohibit the settlement, same serves as bar to the instant action.

In referring to constitutional provisions of the tenor of the above cited article, it is stated in 81 C.J.S. "States" Sec. 111, p. 1083 that "It is not, however, intended to embrace a release of claims doubtful or hazardous which the state might hold against a corporation or individual, and so claims which are unliquidated and uncertain in amount may be compromised by the state at any time before final judgment." See also State ex rel. Wilson, Atty. Gen. v. Young, 44 Wyo. 6, 7 P.2d 216, 81 A.L.R. 114 and cited cases.

In defining the word "unliquidated" it is stated in part, 91 C.J.S. at p. 502, that "the essence of the term is uncertainty, and it is defined as meaning unascertained as to amount, or undetermined."

We are convinced that at the time settlement was reached, the claim asserted by the State must be considered as unliquidated and that the matter of whether the State could recover the full amount of the claim was doubtful. We are, therefore, of the opinion that Mr. Williams as the State's representative was not prohibited by Art. V, Sec. 53 from entering into a compromise agreement concerning the claim and that said agreement which was fully executed serves to bar the claim that State asserts in the instant action.

The court found that extrinsic fraud served to vitiate the judgment in the Tulsa County case, and we assume that this finding was also directed to the settlement upon which the judgment was based. The record, in our opinion, wholly fails to show

that the settlement or judgment was tainted by extrinsic fraud. To the contrary, the record shows that those representing the parties, as did the trial judge, fully understood each other's claim and position.

Reversed with directions to dismiss the State's action.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and DAVISON, HALLEY, JOHNSON and IRWIN, JJ., concur.

WELCH, J., concurs in result.

JACKSON, J., dissents.